Boyce Gene **ROMINES**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–84–341–CR.

Court of Appeals of Texas, Fort Worth.

Sept. 24, 1986.

Kenney Yarbrough, Denton, for appellant.

Jerry Cobb, Crim. Dist. Atty., and Jim E. Crouch, Asst. Crim. Dist. Atty., Denton, for state.

## OPINION

HOPKINS, Justice.

Boyce Gene Romines has appealed the judgment rendered against him in which he was assessed seven years in the Texas Department of Corrections by a jury for the offense of aggravated sexual assault. TEX.PENAL CODE ANN. sec. 22.021 (Vernon Supp.1986).

We reverse and remand.

In this case, Romines was charged with aggravated sexual assault of a three-year-old girl whom his wife was babysitting at the time of the incident. The State in its case relied primarily on two pieces of evidence. One was a statement made by Ro-mines in which he denied committing the offense on the date alleged in the indictment, but admitted committing the offense during the week preceding the alleged date. Also, the State relied upon a videotape made of the victim in which she testified that Romines committed the offense by putting his finger in her vagina.

Romines objected to the admission of the videotape on the grounds that he was denied the right to confront the witness against him. Additionally, he objected that the victim was not competent to testify and that the interview which had taken place was made in a leading manner. The trial court overruled his objections and the videotape was played at the trial.

Appellant presents four points [1] of error. In his first point of error he raises the issue of the constitutionality of the State's use of the videotape. It is well settled that we may not reach the question of the constitutionality of a statute unless a decision on its constitutionality is absolutely necessary for a decision of the case. *Smith v. State,* 658 S.W.2d 172, 174 (Tex.Crim.App. 1983). Thus, we must first address the points of error which do not raise constitutional issues.

Point of error four asserts error in the admission of an extraneous offense. Appellant gave a written statement to the police, denying that he had committed any offense on the date alleged in the indictment, but admitting that he had committed the charged offense during the week previous to that date. In this statement, appellant described the circumstances of the offense somewhat differently than did the child in her videotape. We view the immaterial differences between the statements of appellant and the child as going to the credibility of the two statements, and hold that these differences do not lead to the conclusion that two separate offenses are shown. Therefore, appellant's statement was admissible to prove the allegations

1. Pursuant to TEX.R.APP.P. 74(d), effective September 1, 1986, we will hereafter refer to these contentions as "points" of error.

contained in the indictment. Furthermore, the variance in the dates is of no consequence since the date alleged in a complaint, information or indictment need not be the exact date the offense occurred. The State is not bound by the alleged date so long as the date proved is anterior to the filing of the State's pleadings and not so remote as to show that the offense is barred by the statute of limitations. *See McManners v. State,* 592 S.W.2d 622, 623 (Tex.Crim.App.1980); *Williams v. State,* 565 S.W.2d 63, 64 (Tex.Crim.App.1978); *Neal v. State,* 374 S.W.2d 668, 669 (Tex. Crim.App.1964); *White v. State,* 86 Tex. Crim. 420, 217 S.W. 389, 389 (1919) (opinion on reh'g); *Sanders v. State,* 70 Tex.Cr.R. 209, 156 S.W. 927, 928 (1913); TEX.CODE CRIM.PROC.ANN. art. 21.02(6) (Vernon 1966). We overrule point of error four.

Because all of these remaining points of error concern the admissibility of the child's videotaped statements, we will first set out the applicable law and facts of this case.

The relevant portion of the child videotape statute reads as follows:

Art. 38.071. Testimony of child who is victim of offense

. . . .

Sec. 2. (a) The recording of an oral statement of the child made before the proceeding begins is admissible into evidence if:

(1) no attorney for either party was present when the statement was made;

(2) the recording is both visual and aural and is recorded on film or videotape or by other electronic means;

(3) the recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and has not been altered;

(4) the statement was not made in response to questioning calculated to lead the child to make a particular statement;

(5) every voice on the recording is identified;

(6) the person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;

(7) the defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and

(8) the child is available to testify.

(b) If the electronic recording of the oral statement of a child is admitted into evidence under this section, either party may call the child to testify, and the opposing party may cross-examine the child.

TEX.CODE CRIM.PROC.ANN. art. 38.071, sec. 2 (Vernon Supp.1986).

The record before us contains the videotape which was admitted into evidence and pursuant to appellant's request we have reviewed same in its entirety. Thus, since the record does not reveal that the trial court examined the witness in person, we have the same information the trial court had in determining the competency of the witness.

In the second point of error, appellant contends that the trial court abused its discretion in admitting the videotape testimony of the child because the child was incompetent to testify since: (1) she did not appear to possess sufficient intellect to relate the transaction in question, and (2) the videotape contained unsworn testimony and there had been no finding that the child had sufficient knowledge of the importance of telling the truth. *See* TEX.CODE CRIM.PROC.ANN. art. 38.06 (Vernon 1979). Prior to the introduction of the videotape, appellant objected on the ground that the child was not shown to be a competent witness. In the third point of error, appellant complains that the leading questions of the videotape interviewer were calculated to elicit suggested answers from the child. We will discuss both points jointly.

■ First, we note that TEX.CODE CRIM.PROC.ANN. art. 38.071 does not require that a child be placed under oath. *See Jolly v. State,* 681 S.W.2d 689 (Tex.

App.—Houston [14th Dist.] 1984, pet. granted). Second, TEX.CODE CRIM. PROC.ANN. art. 38.06 does not set a minimum age at which a child may testify.

In *Clark v. State*, 659 S.W.2d 53 (Tex. App.—Houston [14th Dist.] 1983, no pet.), the court held that a three-year-old child was a competent witness although there were conflicts in the testimony. The burden of showing incompetency is upon the party challenging the competency of the witness. *See Hennington v. State*, 101 Tex.Crim.R. 12, 274 S.W. 599, 600 (1924) and *Beavers v. State*, 634 S.W.2d 893, 895 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd). A determination of the witness's competency is primarily the function of the trial court and the decision will not be disturbed unless there is a showing of an abuse of discretion. *See Williams v. State*, 439 S.W.2d 846, 848 (Tex.Crim.App. 1969) and *Clark*, 659 S.W.2d at 55.

There is little dispute that many of the questions asked by the interviewer were "leading," however, in our view, there was no suggestion of answers to the crucial testimony concerning the offense. The witness used an anatomically correct doll to show what she called the placement of a "tu-tu" on the doll as the term applied to herself and the area where appellant had placed his finger. She thus demonstrated her knowledge of what appellant had done to her. Unaided by leading questions, the child testified that appellant pulled her pants down and touched her "tu-tu."

█ Although the better practice would suggest that the interviewer or the trial judge conduct preliminary questioning testing the witness's competency, such determination may be made from a review of the child's entire testimony rather than the preliminary qualification. *See Fields v. State*, 500 S.W.2d 500, 503 (Tex.Crim.App. 1973). The record reflects that the trial judge viewed the videotape testimony in its entirety, as this court has done, and determined that the child was competent and

that the questions were not impermissibly suggestive. We find no abuse of discretion by the trial court and appellant's second and third points of error are overruled.

In his first point of error, appellant contends that the trial court erred in admitting the videotape into evidence because it deprived him of his right to confront and cross-examine the witness against him. *Compare Long v. State*, 694 S.W.2d 185 (Tex.App.—Dallas 1985, pet. granted) *with Newman v. State*, 700 S.W.2d 307 (Tex. App.—Houston [1st Dist.] 1985, pet. pending); *Mallory v. State*, 699 S.W.2d 946 (Tex.App.—Texarkana 1985, pet. pending); *Tolbert v. State*, 697 S.W.2d 795 (Tex.App. —Houston [1st Dist.] 1985, pet. pending); *Alexander v. State*, 692 S.W.2d 563 (Tex. App.—Eastland 1985, pet. granted); and *Jolly*, 681 S.W.2d at 689. While we note that it is the minority view among our sister courts, we accept as correct the decision in *Long*, holding the above quoted portion of the statute to be unconstitutional for the reasons and analysis stated in *Long* and for the further reasons herein given.

In *Newman* and *Alexander*, the First and Eleventh Courts of Appeals, respectively, found that the statute was constitutional based on the reasoning in *Jolly*, a decision of the Fourteenth Court of Appeals. In *Jolly*, the reasoning of the court in upholding the statute was as follows:

> The admission of such testimony is specifically allowed by the above article so long as the victim is available to testify. It is undisputed that the child was available at trial. Appellant had the opportunity to call her to the witness stand but chose not to do so. Section 2(a)(8), (b) provides that the opposing party may cross-examine the child. The choice not to cross-examine her was his; therefore, he cannot complain on appeal of having failed to do so.

*Jolly*, 681 S.W.2d at 695.[2] Thus, these three courts have effectively held, without

---

**2.** We note that article 38.071, section 2(b) provides that "*either* party may *call* the child to testify, and the *opposing* party may cross-exam-

ine the child." *Id.* (emphasis added). A literal reading of the statute does not show that a defendant may *cross-examine* the child. This,

discussion, that having failed to call the child victim as a witness, the defendants waived their constitutional right to confrontation of the witness. They have, furthermore, without discussion, held that the requirements of the state and federal confrontation clauses were met. We respectfully decline to do so, for the reasons stated herein.

We further note that the First Court of Appeals did not, unequivocally, hold the statute constitutional prior to limiting its operation by judicial interpretation.

In *Tolbert*, the First Court held that the child videotape statute was "not *prima facie* violative of the sixth amendment's confrontation clause." *Tolbert*, 697 S.W.2d at 799 (emphasis in original). They went on to say that the "videotape statute, as applied, may violate due process where the procedures do not adequately insure fundamental fairness." *Id.* Indeed in *Tolbert*, the child victim was called to the stand by the State, testified to some details of the offense on direct examination, and was cross-examined by the defendant's attorney. Only after this face-to-face confrontation and cross-examination was the videotape admitted.

Furthermore, in *Tolbert* and *Mallory*, the First and Eleventh Courts of Appeal also placed emphasis on *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). We would respectfully suggest that in these cases the courts' reliance on *Green* was misplaced because the facts in *Green* differ greatly from the situation and procedures outlined in TEX. CODE CRIM.PROC.ANN. art. 38.071, sec. 2(a) and the facts in *Mallory* and *Tolbert.* A brief recitation of the facts and issues in *Green* will point out these material differences.

*Green* is a case wherein the United States Supreme Court held that the California Supreme Court erred in determining that a state statute, relating to the admission of hearsay testimony as substantive evidence, was unconstitutional in not providing an opportunity for cross-examination

therefore appears to be a judicial interpretation

of a witness's statement made prior to trial. The prosecution, faced with an evasive witness who, to some degree, recanted his prior statements that the respondent had supplied him with marihuana, introduced portions of two prior statements of the witness implicating respondent in the crime. The first such statement was given to a police officer and the second was made at respondent's preliminary hearing. The latter was subject to thorough cross-examination by respondent. The United States Supreme Court did not find it necessary to decide the issue of whether the extrajudicial statement to the officer was admissible, but held that since the respondent was afforded the right of confronting and cross-examining the *State's witness* at the preliminary hearing and further had the right of confrontation and cross-examination of the *State's witness* at the time of trial, both as to his current testimony *and* the previous conflicting testimony, the respondent had not been denied his rights under the Sixth Amendment Confrontation Clause.

The facts in the case at bar are substantially different from those in *Green* in that no right of confrontation and cross-examination was afforded to appellant herein, as B____ was not called to the witness stand to testify by the State prior to the admission of the videotape. Thus, B____ never (1) gave or confirmed her videotape statements under oath before the jury, (2) was never forced to submit to cross-examination, and (3) never had her demeanor observed by the jury while being cross-examined *or* examined under oath. Compare the analysis in *Green*, 399 U.S. at 158, 90 S.Ct. at 1935, 26 L.Ed.2d at 497.

The more recent case of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) states, we believe, the current thinking of the Supreme Court on this matter, as follows:

The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conform-

of the statute.

ance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. See *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). See also *Motes v. United States*, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900); *California v. Green*, 399 U.S., at 161–162, 165, 167, n. 16, 90 S.Ct., at 1936–1937, 1938, 1939, n. 16.

The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule." *Snyder v. Massachusetts*, 291 U.S. [97], at 107, 54 S.Ct. [330], at 333 [78 L.Ed. 674 (1934)]. The principle recently was formulated in *Mancusi v. Stubbs:*

> "The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra* [400 U.S. 74], at 89, 91 S.Ct. [210], at 220 [27 L.Ed.2d 213 (1970)] and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra,* 399 U.S., at 161, 90 S.Ct., at 1936. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability.'" 408 U.S., at 213, 92 S.Ct., at 2313. [Footnote omitted.]

*Roberts,* 448 U.S. at 65–66, 100 S.Ct. at 2538–39, 65 L.Ed.2d at 607–08.

■ Thus, in cases where the witness is available, the State may not use prior statements of the witness until the witness has given testimony which is inconsistent with the prior statement, or demonstrates that the witness no longer recalls his prior testimony. Therefore, in failing to call B____ as a witness, after having shown her physical availability, the State violated the mandates of the Texas and United States Constitutions' confrontation clauses.

With the exception of *Long,* the Texas Courts of Appeals decisions cited herein above rested on an implied or expressed finding that cross-examination at trial, where the child is called as a witness by the defendant, can satisfy the defendant's right to confrontation. *Green,* 399 U.S. at 159, 90 S.Ct. at 1935, 26 L.Ed.2d at 497, held, where the defendant had cross-examined the State's witness at a previous hearing, no harm was shown as long as the witness could be fully cross-examined at trial regarding his previous statement. As mentioned in *Green:*

> The main danger in substituting subsequent for timely cross-examination seems to lie in the possibility that the witness' "[f]alse testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestions of others, whose interest may be, and often is, to maintain falsehood rather than truth." *State v. Saporen,* 205 Minn. 358, 362, 285 N.W. 898, 901 (1939).

*Id.*

■ We furthermore, believe that additional danger and harm to this appellant are readily apparent. The statutory provisions allow the State to introduce the investigative statements of the child recorded prior to the institution of any judicial proceedings and given in a relaxed and semi-friendly atmosphere, but requires the accused, in order to confront and cross-examine his accuser, to subject the child to the

very same conditions the statute seeks to avoid. We believe the statute fails to adequately insure fundamental fairness, which constitutes a denial of due process of law.

First of all, in the instant case, the child would surely have had to reiterate her previous adverse testimony or had her memory orally refreshed by appellant's counsel in order for him to effectively cross-examine her about the videotaped testimony. This would have given the jury a "double dose" of the harmful and detrimental testimony against appellant. This "double dose" may have been separated by several hours or days and thereby result in more indelibly impressing same on the minds of the individual jurors.

Secondly, should the child display embarrassment, anxiety or trauma in being called to the witness stand by the appellant, this fact might well be taken as a circumstance against appellant and influence some of the jurors in their deliberations as to appellant's guilt and even more likely, influenced their deliberation as to his punishment.

Furthermore, as discussed in *Long*, "by not commanding the presence of the child complainant, a witness indispensable to the State's case, but simply providing appellant a right to call her to testify, compels appellant to forego either his right to confrontation or his right to remain passive." *Long*, 694 S.W.2d at 192. In our view, the compulsion of an election between the two constitutional rights denies appellant due process of law.

In calling the complaining witness, a child of tender years, as his witness, the appellant encounters the risks and pitfalls of placing on the witness stand an uncooperative witness, and one who likely will display the embarrassment and trauma expected of a youngster under the stress of public comment about an embarrassing and unpleasant experience. The jury will likely sense the child's trauma and consciously or subconsciously have a feeling of ill will, if not out right hatred, for the party inflicting this traumatic experience on the child by calling her to testify. It is not impossible to conceive that the jury's hostility toward

the accused will be magnified and adversely affect the accused either during their deliberations as to guilt or innocence or in determining the punishment that the accused shall receive.

This court is vitally concerned with the emotional well being of all child witnesses and would prefer to spare them from the probable unpleasantness, embarrassment and possible trauma of recounting their individual stories to juries in the intimidating environment of a courtroom. However, to do so at the sacrifice of the coveted constitutional guarantees of due process and the right of confrontation is repugnant to our sense of justice. As so aptly stated by our Court of Criminal Appeals more than 40 years ago in a child rape case:

> The little girl was nervous and ex[c]ited and this was relied upon as a reason for the State not offering her as a witness.... We do not believe that it is sufficient under the facts stated to defeat the right of the accused to be confronted by the witness against him. *The writer shares all of the sympathy which the State and the jury may have had for the child in her unfortunate situation and would like to relieve her completely of the embarrassment, but it would set a precedent too dangerous to be sanctioned.* ... The rights of the accused in the instant case, however important to him, are infinitesimal when compared to the rights of the millions which are protected by the constitutional provision involved.

*Vasquez v. State*, 145 Tex.Cr.R. 376, 167 S.W.2d 1030, 1032 (1942) (emphasis added). This court likewise finds that to require an accused to call the child to the witness stand in an attempt to satisfy his right of confrontation is a violation of due process of law and is a precedent too dangerous to be sanctioned.

■ In the case at bar, delayed cross-examination of the child presents yet another problem. The fondling incident in question took place on February 17, 1984; the videotape was made on March 30, 1984; and trial began on December 3, 1984. Eight

months after the videotape, we can hardly expect the child's memory of peripheral details to be improved, and therefore belated cross-examination as to the incident itself would hardly seem worthwhile. Cross-examination of a three-year-old child eight months after the videotape was made cannot serve as a constitutionally adequate substitute for cross-examination contemporaneous with statements presented for consideration by the jury.

■ Finally, unlike some of our sister courts of appeals, we cannot find that appellant, who objected to the admission of the videotape on the ground that it denied his client's constitutional right to confrontation, waived his right to complain when he did not call the child to testify. As stated by the United States Supreme Court:

> There is a presumption against the waiver of constitutional rights, see, *e.g., Glasser v. United States,* 315 U.S. 60, 70–71 [62 S.Ct. 457, 464–465, 86 L.Ed. 680 (1942)], and for a waiver to be effective it must be clearly established that there was "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)].

*Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314, 317 (1966).

■ We concur with the holding in *Long,* that, TEX.CODE CRIM.PROC.ANN. art. 38.071, sec. 2(a) is unconstitutional as applied to appellant because it denied him due process and the right of confrontation under both the Constitution of the United States and the Texas Constitution. Appellant's first point of error is sustained.

■ In deciding whether the admission of the videotape was harmless error under the record of this case, we note that the appellant's confession and testimony at trial indicated that the child was showing him what her mother's brother had done to her and that she unzipped her pants and placed appellant's hand between her legs. In the taped interview the child stated that the appellant pulled her pants down and placed

his hand inside her panties. Although appellant admitted the crime, we cannot assume that the jury would not have believed appellant's version and have assessed him a lesser sentence if it had not considered the videotape. Although the error relates primarily to punishment, the punishment was assessed by the jury and not the trial court. Therefore, this court is without authority to direct a new hearing before a different jury on the issue of punishment alone. *Daniel v. State,* 585 S.W.2d 688, 693 (Tex.Crim.App.1979).

The judgment of the trial court is reversed and the cause is remanded for a new trial.

FENDER, C.J., and HILL, JOE SPURLOCK II and FARRIS, JJ., concur.

W.A. HUGHES, Jr. (Retired, Sitting by Assignment), J., dissents.

W.A. HUGHES, Jr. (Retired, Sitting by Assignment), Justice, dissenting.

I respectfully dissent and would hold that TEX.CODE CRIM.PROC.ANN. art. 38.071, sec. 2 (Vernon Supp.1986), is constitutional.

I differ with the majority in their holding that it is not constitutional and with their reasoning in approving the philosophy of *Long v. State,* 694 S.W.2d 185 (Tex.App.—Dallas 1985, no pet.), and instead would follow *Jolly v. State,* 681 S.W.2d 689 (Tex. App.—Houston [14th Dist.] 1984, pet. granted).

The majority feels that section 2 does not adequately provide an appellant with a right of confrontation and cross-examination because, in their view, appellant is compelled "to forego either the right to confrontation or his right to remain passive." *Long,* 694 S.W.2d at 192. I do not see where the election is any different if the child is speaking to a videotape or testifying live from the stand. Either way a defendant would be put to the choice of remaining passive or exercising his right of cross-examination. Either way, a defendant has the opportunity of seeing his accuser testify against him. Either way, under section 2, the defendant has the option of

cross-examination. An element in a live confrontation as opposed to a video confrontation is that in the video confrontation, the accused does not have the opportunity to intimidate the child with his presence as a father or adult figure. If the intimidation feature of confrontation is a constitutional right of the defendant, then the theory I am advancing in this dissent is in error and the majority opinion is correct. It was obviously the intention of the legislature in providing for a video presentation such as this that the intimidation of a powerful father figure as opposed to a timid, yielding child figure be eliminated. The legislature recognized a very pressing problem of our times and has sought to correct it in providing for the video deposition such as was taken in this case. I recognize the very serious problem of maintaining the right of confrontation and cross-examination in our system, but I also recognize that in these times of changing society and its attendant problems that the use of new technologies is appropriate in dealing with those problems. I believe that the philosophy stated in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) is applicable to this case and I would hold that this case should be affirmed.

BURDOCK, J., concurs.